**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WALTER LUMPKIN,

     Petitioner,                   Civil No. 5:08-CV-10304
                                    HONORABLE JOHN CORBETT O'MEARA
v.                                 UNITED STATES DISTRICT JUDGE

KENNETH ROMANOWSKI,

     Respondent,

                                  /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

     Walter Lumpkin, ("petitioner"), presently confined at the Mound Correctional

Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28

U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for armed

robbery, M.C.L.A. 750.529; carjacking, M.C.L.A. 750.529a; and being a fourth felony

habitual offender, M.C.L.A. 769.12. For the reasons stated below, petitioner's

application for writ of habeas corpus is **DENIED.**

### I. Background

     Petitioner was convicted of the above offenses following a jury trial in the Wayne

County Circuit Court. This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Here, the victim testified that he was sitting in the driver's side seat of a parked
> car between 4:00 a.m. and 5:00 a.m. when he was approached by two black

men, one of them went to the passenger side of the car and the other to his side of the car, banged on the window with a gun, and then opened his car door. The victim was forcibly removed from the car by having his arm pulled, he was turned physically around so that his back was to the perpetrator, and a gun was placed to the back his head. The perpetrator kept asking the victim for his money. The other perpetrator came around to the driver's side and was checking inside the car. The perpetrator who was holding the gun then went through the victim's front and back pockets, retrieved the victim's wallet, and turned him back around to face him. After asking, again, where the money was, the perpetrator pulled the victim to the side, got into the driver's seat, his accomplice got into the back seat of the vehicle, and they drove off with the wallet and the vehicle. The victim testified that defendant was the primary perpetrator of both the armed robbery and the carjacking. On cross examination, defense counsel elicited testimony from the victim that his statement to the police on the day of the incident was that the main perpetrator of the crimes was a dark-skinned black male and counsel indicated that defendant was a light-skinned black male. The victim also testified that it was dark outside when the events occurred.

The police officer who took the initial complaint in this matter testified that the victim described the perpetrators of the crime as one dark-skinned black male, who held the gun to his head, and one light-skinned black male, who patted him down, took his wallet, and kept asking him for his money. The arresting officer testified that when he stopped the victim's carjacked vehicle the next morning, defendant was driving the vehicle. The police investigator who conducted the photo lineup testified that the victim immediately picked defendant out from the lineup and identified him as the man who had the gun and pulled him out of the car.

*People v. Lumpkin,* No. 245440, * 1-2 (Mich.Ct.App. May 18, 2004).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 471 Mich. 949; 690

N.W. 2d 111 (2004). Petitioner then filed a post-conviction motion for relief from

judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v.*

*Lumpkin,* No. 02-000774-01 (Wayne County Circuit Court, April 28, 2006). The

Michigan appellate courts denied petitioner leave to appeal. *People v. Lumpkin*, No.

276810 (Mich. Ct.App. June 21, 2007); *lv. den.* 480 Mich. 953; 741 N.W. 2d 360 (2007).

Petitioner seeks a writ of habeas corpus. For the purposes of judicial clarity and economy, the Court will paraphrase the claims rather than recite them verbatim:

I. Petitioner was deprived of his right to due process and a fair trial when the trial judge gave the jurors a supplemental instruction on the elements of aiding and abetting when the prosecution had not tried the case under the theory that petitioner was an aider and abettor, but that he was the principal.

II. Petitioner's right to be free from double jeopardy was violated when he was convicted of armed robbery and carjacking.

III. Petitioner was deprived of a fair trial because of prosecutorial misconduct.

IV. Petitioner was deprived of the effective assistance of trial counsel and appellate counsel.

V. Petitioner was deprived of the effective assistance of appellate counsel.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

### A. Claim # 1. The instructional error claim.

Petitioner first contends that the trial judge erred in giving the jury a supplemental instruction on aiding and abetting, because it was inconsistent with the prosecutor's theory of the case that petitioner was the principal offender.

The Michigan Court of Appeals rejected petitioner's claim:

> An aiding and abetting instruction is appropriate when there is evidence that more than one person was involved in committing a crime and that the defendant's role in the crime may have been less than direct commission of the crime. *People v. Bartlett*, 231 Mich.App 139, 157; 585 NW2d 341 (1998). Here, there is evidentiary support for the aiding and abetting instruction. The police officer who took the initial complaint on this matter testified that the victim told him a dark-skinned male held a gun to his head while a light-skinned black male patted him down, took his wallet, and kept asking him for his money during the course of the armed robbery and carjacking. Defense counsel noted that defendant is a light-skinned black male and he was positively identified by the victim as one of the perpetrators of these crimes. Although the victim may have given conflicting identifying information with regard to which perpetrator held the gun to his head; obviously, the jury must have found more reliable the information that the victim gave to the police officer right after these highly emotional crimes were committed against him. The prosecutor's theory was that defendant was the perpetrator who held the gun to the victim's head but aiding and abetting

is not a separate charge, it is merely a separate theory for conviction under the same charge. In this case, there was evidence to support the prosecutor's theory, as well as the aiding and abetting theory; accordingly, the trial court's instruction was proper. *See People v. Triplett*, 68 Mich.App 531, 542-543; 243 NW2d 665 (1976), *rev'd on other grounds* 407 Mich. 510 (1980). *Lumpkin,* Slip. Op. at * 2.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977). The challenged instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial court record. *See Payne v. Smith,* 207 F. Supp. 2d 627, 649 (E.D. Mich. 2002). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *See Scott v. Mitchell*, 209 F. 3d 854, 882 (6th Cir. 2000); *See also Payne,* 207 F. Supp. 2d at 648.

Under Michigan law, a criminal defendant may be charged as a principal but convicted as an aider and abettor without violating due process. *See People v. Turner*, 213 Mich. App. 558, 568; 540 N.W. 2d 728 (1995); *overruled in part on other grounds*

*in People v. Mass*, 464 Mich. 615, 628; 628 N.W. 2d 540 (2001).  Likewise, under federal law, a defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission, although not named in the indictment as an aider and abettor, without violating federal due process. *See Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986)(*citing Stone v. Wingo*, 416 F. 2d 857 (6th Cir. 1969).  It is thus not improper for a state trial court to instruct a jury on the elements of aiding and abetting, even if the habeas petitioner was charged as the principal. *Hill,* 788 F. 2d at 408; *See also O'Neal v. Morris*, 3 F. 3d 143, 145 (6th Cir. 1993), *rev'd on other grounds sub nom O'Neal v. McAninch*, 513 U.S. 432 (1995). Petitioner is not entitled to habeas relief on his first claim.

### B.  Claim # 2.  The double jeopardy claim.

Petitioner next contends that his convictions for both carjacking and armed robbery violate the Double Jeopardy Clause because the victim's vehicle was taken during the commission of both crimes in a single criminal transaction.  The Michigan Court of Appeals rejected the claim on the ground that petitioner's double jeopardy claim had already been rejected by Michigan courts. *Lumpkin,* Slip. Op. at * 2 (citing *People v. Parker*, 230 Mich. App. 337, 341-345; 584 NW2d 336 (1998); *People v. Davis*, 468 Mich. 77, 80-82; 658 NW2d 800 (2003)).

In *People v. Parker, supra*, the Michigan Court of Appeals held that dual convictions for carjacking and armed robbery did not violate the Double Jeopardy Clause, finding that the two statutes were addressed at prohibiting conduct violative of

6

different societal norms. *Parker, supra* at 344. The Michigan Court of Appeals ruled that the carjacking statute is "intended to prohibit takings accomplished with force or the mere threat of force," as opposed to the armed robbery statute, which is "intended to prohibit takings accomplished by an assault and the use of a dangerous weapon." *Id.* at 343. The Court in *Parker* further ruled that "[i]n the carjacking statute, the Legislature specifically authorized two separate convictions arising out of the same transaction." *Id.* at 343-44. The Michigan Court of Appeals further ruled that the defendant's carjacking and armed robbery convictions did not violate the Double Jeopardy Clause because they do not constitute the "same offense" under the *Blockburger* test. In so ruling, the Michigan Court of Appeals noted that the offense of carjacking does not require proof that the defendant intended to deprive the victim permanently of possession of the vehicle, whereas armed robbery requires this showing. The Michigan Court of Appeals also noted that the offense of armed robbery requires proof that the defendant was armed with a dangerous weapon, while the carjacking statute has no such requirement. *Id.* at 344.

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273 (1996). The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995)(*quoting Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). Although the Double Jeopardy Clause protects a defendant against

cumulative punishments for convictions on the same offense, the clause does not prohibit

the state from prosecuting a defendant for such multiple offenses in a single prosecution.

*See Ohio v. Johnson,* 467 U.S. 493, 500 (1984).  Moreover, whether punishments are

multiple, so as to violate the Double Jeopardy Clause, is essentially a question of

legislative intent. *Id.* at 499.

When multiple convictions are secured at a single trial, the test for determining

whether two offenses are sufficiently distinguishable to permit the imposition of

cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299,

304 (1932). *Brown v. Ohio*, 432 U.S. 161, 166 (1977).  As the Supreme Court explained

that test in *Brown*:

> "The applicable rule is that where the same act or transaction constitutes a
> violation of two distinct statutory provisions, the test to be applied to
> determine whether there are two offenses or only one, is whether each
> provision requires proof of an additional fact which the other does not····"
> This test emphasizes the elements of the two crimes.  "If each requires
> proof of a fact that the other does not, the *Blockburger* test is satisfied,
> notwithstanding a substantial overlap in the proof offered to establish the
> crimes····"
> *Id*. at 166 (*quoting Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975).

Analysis of this issue require the Court to determine "whether [the legislature]

intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.

2d 533, 536 (6th Cir. 1980) (*quoting Jeffers v. United States*, 432 U.S. 137, 155 (1977)).

"To determine the [legislative] intent it is necessary to examine the statutory language

and the legislative history, as well as to utilize other techniques of statutory

construction." *Pandelli,* 635 F. 2d at 536.  If the legislative intent is not clearly expressed

or cannot be discerned by accepted techniques of statutory construction, then the Court must analyze the two crimes to determine if the elements completely overlap according to the *Blockburger* test. "The Court focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction.... If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Barrett*, 933 F. 2d 355, 360-61 (6th Cir. 1991)(internal citations and quotes omitted). Thus, the Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation. *See United States v. Dixon*, 509 U.S. 688, 696 (1993).

However, in deciding a habeas petitioner's Double Jeopardy claim, a federal habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished for both offenses. *See Palmer v. Haviland,* 273 Fed. Appx. 480, 486-87 (6th Cir. 2008). Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis,* 886 F. 2d 777, 780 (6th Cir. 1989). The Michigan Court of Appeals determined that the Michigan Legislature intended cumulative punishment for the offenses of armed robbery and carjacking. This Court sitting on federal habeas review is bound by that determination. *Id.* Because this determination is binding in federal habeas corpus, petitioner's double jeopardy claim lacks merit. *See Rodgers v. Bock,* 49 Fed. Appx. 596,

597 (6th Cir. 2002). Because the Michigan Court of Appeals clearly held that multiple punishments for the two crimes are permissible under Michigan law, the state trial court did not violate petitioner's federal right against double jeopardy. *Palmer,* 273 Fed. Appx. at 487.

## C. Claim # 3. The prosecutorial misconduct claim.

In his third claim, petitioner contends that the prosecutor committed misconduct in her opening statement by offering her personal belief that petitioner was guilty. Although petitioner does not quote the precise comments used by the prosecutor, in his appellate brief on direct appeal, petitioner's appellate counsel claimed that the following comment by the prosecutor in her opening argument amounted to a personal belief in petitioner's guilt:

> "That's what I have to prove, beyond a reasonable doubt. And there is absolutely no doubt that Mr. Gresham is carjacked. There's no doubt about that. Someone took his car. Someone took the keys to his car. Someone took his wallet. That person is before you today on trial. That person is Mr. Walter Lumpkin." (Tr. 6/17/2002, p. 117). [1]

In rejecting petitioner's claim, the Michigan Court of Appeals stated:

> The prosecutor merely indicated that the charged crimes were committed and that, based on the forthcoming evidence to be presented, she would prove that defendant committed them-a statement supported by the fact that defendant was being prosecuted for the crimes. The prosecutor did not ask the jury to convict defendant on the basis of her special or personal knowledge. *Lumpkin,* Slip. Op. at * 3.

When a petitioner seeking habeas relief makes a claim of prosecutorial

---

[1] *See* Brief for Defendant-Appellant, p. 16 [Part of this Court's Dkt. # 10-6].

misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.;See also Payne v. Smith,* 207 F. Supp. 2d at 648.

"An opening statement is designed to allow each party to present an objective overview of the evidence intended to be introduced at trial." *United States v. Burns*, 298 F. 3d 523, 543 (6th Cir. 2002)(*citing United States v. Brockington*, 849 F. 2d 872, 875 (4th Cir. 1988)). It is inappropriate for a prosecutor to "use the opening statement to poison the jury's mind against the defendant or to recite items of highly questionable evidence." *Id.* (internal quotation marks and citations omitted). Prosecutors are not permitted during their opening and closing arguments to offer their opinions as to credibility of a witness or the guilt of a defendant. *See Cristini v. McKee,* 526 F. 3d 888, 901 (6th Cir. 2008); *cert. den. sub nom Cristini v. Hofbauer*, 129 S. Ct. 1991 (2009).

In the present case, the prosecutor's remarks in her opening statement did not amount to a personal belief in petitioner's guilt. Instead, a review of the remarks in the

context of the prosecutor's entire opening argument shows that the prosecutor was merely stating to the jury what the forthcoming evidence would establish in this case. (Tr. 6/17/2002, pp. 113-118). Indeed, right after making the comments that petitioner cites, the prosecutor concluded her opening argument by stating the following:

> "I ask you to keep an open mind as you hear this testimony. I ask again of you that you set aside maybe your difficulties with what Mr. Gresham [the complainant] was doing. I ask that you go in that jury room aud take a good hard look at the evidence that's going to be presented to you and come back with a verdict of guilty on all Counts. Thank you." (*Id.* at pp. 117-18).

The prosecutor did not assert her personal belief that petitioner was guilty in her opening argument, because when viewed in context, the prosecutor was simply setting forth the evidence she would present in her case and what it would prove. *See U.S. v. Jewell,* 16 Fed. Appx. 295, 299 (6th Cir. 2001). There was nothing improper about the prosecutor's remarks in her opening argument because she was merely summarizing what she expected the evidence to show in this case. *See U.S. v. McCaskill*, 62 Fed.Appx. 71, 76 (6th Cir. 2003). Additionally, the trial judge advised the jurors at the beginning of trial that the lawyers' opening arguments were not evidence (Tr. 6/17/2002, p. 104) and again advised the jurors at the close of the case that the lawyers' arguments were not evidence. (Tr. 6/18/2002, p. 35). The trial court's instructions that the opening arguments were not evidence cured any possible prejudice in this case. *Burns,* 298 F. 3d at 543. Petitioner is not entitled to habeas relief on his third claim.

### D. Claims # 4 and # 5. The ineffective assistance of counsel claims.

In his fourth and fifth claims, petitioner contends that he was deprived of the

effective assistance of trial and appellate counsel.

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner raised his ineffective assistance of trial counsel claims that he presents in his petition for the first time in his post-conviction motion. In denying the motion, the trial court judge indicated that pursuant to M.C.R. 6.508(D)(3), a defendant is not entitled to post-conviction relief unless the defendant demonstrates both good cause for failure to raise the claims on appeal and actual prejudice from the alleged regularities that support the claim. *People v. Lumpkin,* No. 02-000774-01, * 2 (Wayne County Circuit Court, April 28, 2006). The trial judge noted that to demonstrate actual prejudice under M.C.R. 6.508(D)(3)(b)(i), a defendant must show that "but for the alleged error, the defendant would have had a reasonable likely chance of acquittal." *Id.* Finally, the trial judge mentioned that a defendant could also show actual prejudice by showing that there was an irregularity "so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case." *Id.* (citing M.C.R. 6.508(D)(3)(b)(iii)). After reviewing and rejecting petitioner's claims, *Id.* at pp. 2-11, the trial judge denied the motion by stating that petitioner had failed to establish that but for the alleged errors, he would not have been convicted or that a miscarriage of justice had occurred. The judge concluded that petitioner had failed to establish any actual prejudice which required the reversal of his convictions. *Id.* at p. 11. It thus appears that the trial court judge relied on the provisions of M.C.R. 6.508(D)(3) to deny petitioner relief on his claims.

Morever, the Michigan Court of Appeals and Michigan Supreme Court denied petitioner's post-conviction applications for leave to appeal the denial of his post-

14

conviction motion on the ground that petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lumpkin*, No. 276810 (Mich. Ct.App. June 21, 2007); *lv. den.* 480 Mich. 953; 741 N.W. 2d 360 (2007).

Regardless of whether the trial court clearly invoked the provisions of M.C.R. 6.508(D)(3) to deny petitioner's claims, the Michigan Court of Appeals and the Michigan Supreme Court both invoked M.C.R. 6.508(D) to deny petitioner relief. Petitioner did not raise any of his post-conviction claims on direct review. [2] Under the circumstances, the Michigan courts clearly invoked the provisions of M.C.R. 6.508(D)(3) to procedurally bar petitioner's claims. *See Simpson v. Jones*, 238 F. 3d 399, 407 (6th Cir. 2000)(Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Burroughs v. Makowski,* 282 F. 3d 410, 414 (6th Cir. 2002)(holding that "the Michigan Court of Appeals and Michigan Supreme Court's statements that Burroughs was not entitled to relief under M.C.R. 6.508(D) presents a sufficient explanation that their rulings were

---

[2] Petitioner attempted to raise an ineffective assistance of trial counsel claim on direct appeal by filing a supplemental *pro se* motion to remand for a *Ginther* hearing, which was denied. *People v. Lumpkin,* No. 245440 (Mich.Ct.App. October 9, 2003). In this motion, petitioner claimed that trial counsel was ineffective for failing to call Wilbert Smith to testify as an alibi witness, claiming that Smith would testify that petitioner was asleep on a couch at Smith's house at the time of the carjacking and robbery. *See* Motion to Remand For Ginther Hearing [this Court's Dkt. # 10-6; petitioner did not attach a copy of this motion to his petition, although he attached a copy of the motion for immediate consideration of the motion for remand]. By contrast, in his post-conviction motion, petitioner contended that his trial counsel was ineffective for failing to present Wilbert Smith and an individual identified only as "Blue" to testify that they were present when the victim rented out his car to petitioner in exchange for some crack cocaine. Petitioner's remaining ineffective assistance of trial counsel claims were all raised for the first time in his post-conviction motion as well. Because the ineffective assistance of trial counsel claims raised by petitioner in his fourth and fifth claims are different than the ineffective assistance of counsel claim presented during petitioner's direct appeals process, these claims were not fairly presented to the state courts as part of the direct appeal process. *See Caver v. Straub,* 349 F. 3d 340, 346-47 (6th Cir. 2003)(*citing to Pillette v. Foltz,* 824 F. 2d 494, 497 (6th Cir. 1987)).

based on procedural default"); *Alexander v. Smith*, 311 Fed. Appx. 875, 883-84 (6th Cir. 2009)(confirming that *Simpson* and *Burrough* are binding precedent, therefore, the Michigan Supreme Court's invocation of 6.508(D) was sufficient to constitute a procedural default of petitioner's claims); *McCray v. Metrish,* 232 Fed.Appx. 469, (6th Cir. 2007)(petitioner's claim procedurally defaulted where Michigan Court of Appeals and Michigan Supreme Court denied appeal pursuant to M.C.R. 6.508(D), even though trial court denied post-conviction motion on the merits). Petitioner's ineffective assistance of trial counsel claims are procedurally defaulted.

With respect to his ineffective assistance of trial counsel claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."
> *Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at

16

753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his ineffective assistance of trial counsel claims. Appellate counsel filed a nineteen page brief on appeal which raised the first three claims raised by petitioner in his habeas application. [3] Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Wayne County Circuit Court in its opinion and order denying post-conviction relief,

---

[3] *See* Brief for Defendant-Appellant [Part of this Court's Dkt. # 10-6].

*Lumpkin,* No. 02-000774-01, Slip. Op. at * 2-11, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise his ineffective assistance of trial counsel claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.

In the present case, because petitioner has not demonstrated any cause for the procedural default of his ineffective assistance of trial counsel claims, it is unnecessary to reach the prejudice issue. *Smith*, 477 U.S. at 533; *Payne v. Smith,* 207 F. Supp. 2d at 638-39.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider the ineffective assistance of trial counsel claims as grounds for a writ of habeas corpus in spite of the procedural default. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's these claims on the merits. *See Payne,* 207 F. Supp. 2d at 639.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.

3d 883, 891 (6th Cir. 2007).  For the reasons stated by the Wayne County Circuit Court in rejecting petitioner's ineffective assistance of trial counsel claims on post-conviction review, as well as for the reasons stated by the respondent in their answer to the petition, petitioner has failed to show that his claims have any merit.  The reasons justifying the denial of petitioner's ineffective assistance of trial counsel claims was "ably articulated by the" state trial court, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See Bason v. Yukins,* 328 Fed. Appx. 323, 324 (6th Cir. 2009); *cert. den.* 130 S. Ct. 1143 (2010) .  Petitioner's ineffective assistance of trial counsel claims are thus barred by procedural default and do not warrant relief.

Finally, to the extent that petitioner is raising his ineffective assistance of appellate counsel claim as an independent ground for relief, he is not entitled to the issuance of a writ of habeas corpus.  Petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise his ineffective assistance of trial counsel claims claims on his appeal of right, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000).  The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise his ineffective

assistance of trial counsel claims on petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1ˢᵗ Cir. 1987)). In this case, there is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided on more than one occasion. *Gardner*, 817 F. 2d at 189. Petitioner is therefore not entitled to habeas relief on his fourth or fifth claims.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner

states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. **ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

> s/John Corbett O'Meara
> United States District Judge

Dated: March 25, 2010

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 25, 2010, using the ECF system and/or ordinary mail.

<u>s/William Barkholz</u>
Case Manager